**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**JOSEPH HEYWOOD HAYMORE,**

      **Petitioner,**

**v.**                                   **Case No. 3:20cv5518-MCR/MAF**

**WARDEN JOSEPH,
FPC PENSACOLA,**

      **Respondent.**

_____/

## <u>REPORT AND RECOMMENDATION TO DENY § 2241 PETITION</u>

On or about May 18, 2020, Joseph Heywood Haymore, a federal prisoner proceeding pro se, filed petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, with exhibits, challenging the execution of his sentence. ECF No. 1.   On July 30, 2020, Respondent filed a Motion to Dismiss for Lack of Jurisdiction, with exhibits.   ECF No. 4.   Petitioner Haymore has filed a response, with exhibits.   ECF No. 5.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).   After careful consideration, the undersigned concludes that this § 2241 petition should be denied.

## Background

In the United States District Court for the Central District of California, case number 8:12cr090-AG, a jury found Petitioner Joseph Heywood Haymore guilty of three counts of wire fraud under 18 U.S.C. § 1343.   *See* United States v. Shults, 730 Fed. App'x 421, 423 (9th Cir. 2018); ECF No. 4 Ex. 2.   In November 2014, the court sentenced Haymore to 57 months in prison.   ECF No. 4 Ex. 2.   Haymore appealed, and the Ninth Circuit Court of Appeals affirmed his conviction and sentence.   Shults, 730 Fed. App'x at 424-26.

Haymore filed this § 2241 petition on or about May 18, 2020, while incarcerated at the Federal Prison Camp in Pensacola, Florida, in the Northern District of Florida.   ECF No. 1.   He raises two grounds:   (1) cruel and unusual punishment due to exposure to the Covid-19 pandemic; and (2) cruel and unusual punishment due to mental anguish resulting from "changing positions and failure to process" his referral for home confinement. *Id.* at 6; *see* ECF No. 1-1.   As relief, he seeks "[a] temporary injunction requiring BOP [Bureau of Prisons] to transfer [him] to home confinement within 3 days and a permanent injunction extending the home confinement

order for the remainder of [his] prison term."   ECF No. 1 at 8.   In support,

he references the Coronavirus Aid, Relief, and Economic Security Act

("CARES Act"), particularly the provision thereof that "allows the Attorney

General to expand the use of home confinement in order to reduce . . . the

inmate population in Federal prison [so] that 'social distancing' could be

achieved among federal inmates."   ECF No. 1-1 at 1.   He details some of

the conditions at FPC Pensacola and asserts, "[i]n short, the social

distancing mandated and authorized by the CARES Act and deemed

necessary by Attorney General Barr can only be accomplished by a

significant reduction in the number of inmates" housed at FPC Pensacola.

*Id.* at 1-3.   He explains that, on April 17, 2020, his Case Manager advised

him that he had been referred for home confinement pursuant to the CARES

Act.   *Id.* at 3.   The next day, he "was presented with and signed the

paperwork necessary for that transfer."   *Id.*   Nevertheless, "[d]ays later,

[his] Case Manager told me the criteria had changed and [he] was no longer

eligible."   *Id.*   He asserts he is among the many federal inmates "caught in

limbo" due to the BOP changing and reversing course and cites an article in

the Washington Post.   *Id.*   He further asserts:

> Obviously, given Congress' purpose and intent to reduce inmate population due to the Covid-19 pandemic, Attorney General Barr's emergency declaration to immediately expedite the transfer of inmates to home confinement, the CDC's very public statements regarding the necessity of social distancing, President Trump's daily coronavirus briefings and the constant media reports including death counts both within and outside the BOP, the BOP is fully aware of the risk of Covid-19 to the inmate population and the need to depopulate federal prisons.   It's failure to [do] so can at best be characterized as the deliberate indifference that the court in Wilson v. Williams[,] Case No. 4:20-CV-00794 (N.D. Ohio 4/22/20) (Doc 22) deemed sufficient to issue an injunction requiring the depopulation at Elkton Federal Correctional Institution and at worst, may demonstrate willful actions to defeat the intent of Congress and Attorney General William Barr.

*Id.* at 3-4.   His attached exhibits include his request for administrative remedy and copies of news articles about federal inmates receiving "mixed signals about home-confinement releases."   ECF Nos. 1-2, 1-3, 1-4.

Respondent has filed a motion to dismiss, with exhibits, asserting the Court lacks jurisdiction.   ECF No. 4.   Respondent indicates Haymore submitted an administrative remedy request to the Warden at FPC Pensacola on May 8, 2020, and in this request, assigned number 1018324-F1, he sought immediate placement in home confinement.   *See* ECF No. 4-1 at 5.   On June 3, 2020, the Warden responded to the administrative remedy request.   *Id.* at 15.   Respondent indicates Haymore did not file an

appeal of that response. *See id.* at 3. Therefore, according to Respondent, Haymore has not exhausted his administrative remedies and, thus, this Court has no jurisdiction to consider Haymore's petition. ECF No. 4 at 2, 4. Respondent further argues that, even if Haymore had exhausted his administrative remedies, the federal district court does not have the authority to order BOP to release him to home confinement under the CARES Act. *Id.* at 3-4.

## Analysis

The Judiciary Act of 1789 granted federal courts the power to issue the writ of habeas corpus. *See* United States v. Hayman, 342 U.S. 205 (1952). The habeas remedy is now codified in 28 U.S.C. § 2241, subsection (c)(3) of which provides that the writ of habeas corpus shall not extend to a prisoner unless the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." As noted in Hayman, prisoners must bring habeas corpus applications in the district of confinement. 342 U.S. at 213. Because courts with federal prisons in their jurisdictional boundaries became inundated with habeas petitions, and because the materials, witnesses, and other evidence which had a significant bearing on the determination of the

legality of a sentence were generally located in the district where sentence was imposed rather than where the prisoner was confined, in 1948 Congress enacted § 2255 of Title 28.   *See id.* at 212-14, 218; *see also* Wofford v. Scott, 177 F.3d 1236, 1239 (11th Cir. 1999).

The language of § 2255 suggests, and the Eleventh Circuit has expressly concluded, that this statute channels challenges to the legality of the imposition of a sentence, while leaving § 2241 available to challenge the continuation or execution of an initially valid confinement.   *See* McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc., 851 F.3d 1076, 1081 (11th Cir. 2017); Antonelli v. Warden, U.S.P. Atlanta, 542 F.3d 1348, 1351-52 (11th Cir. 2008); United States v. Jordan, 915 F.2d 622, 629 (11th Cir. 1990) (explaining § 2255 is primary method of collateral attack on federally imposed sentence).   Thus, § 2241 provides an avenue for challenges to matters such as the administration of sentences or parole, prison disciplinary actions, prison transfers, and certain types of detention.   *See* Antonelli, 542 F.3d at 1352 (petition challenging decision of federal Parole Commission is properly brought pursuant to § 2241); Thomas v. Crosby, 371 F.3d 782, 810 (11th Cir. 2004) (petition challenging pre-trial detention is properly brought

pursuant to § 2241); <u>Bishop v. Reno</u>, 210 F.3d 1295, 1304 n.14 (11th Cir. 2000) (petition challenging Bureau of Prisons' administration of service credits, including calculation, awarding, and withholding, involves execution rather than imposition of sentence, and thus is matter for habeas corpus).

In his § 2241 petition, Haymore essentially challenges the execution of his sentence.   ECF No. 1.   Specifically, he challenges the BOP's decision not to release him to home confinement during the COVID-19 pandemic despite his initial referral for such release and, as relief, he requests this Court issue an injunction requiring BOP to transfer him to home confinement for the remainder of his prison sentence.   *Id.*; *see* <u>Brown v. Att'y Gen.</u>, No. 3:20cv661-J-32JBT, 2020 WL 4582732, *1 (M.D. Fla. Aug. 10, 2020) (order denying § 2241 petition seeking home confinement based on health and COVID-19 pandemic, explaining at the outset, "Because Petitioner appears to challenge the execution of his sentence – specifically, the denial of home confinement – the Amended Petition may proceed under § 2241."). *See also* <u>Lagan v. Edge</u>, No. 20-CV-2221 (AMD), 2020 WL 3403109, *2 (E.D.N.Y. June 19, 2020) (order denying § 2241 petition seeking, among other things, release to home confinement and explaining "[a] federal

prisoner may challenge the conditions of his confinement by habeas petition pursuant to § 2241" and "this includes challenges to the dangerous conditions caused by the COVID-19 pandemic").

In <u>Wilson v. Williams</u>, 961 F.3d 829 (6th Cir. June 9, 2020), the Sixth Circuit Court of Appeals reviewed the decision referenced by Haymore in his petition, ECF No. 1-1 at 4, involving a § 2241 petition filed by four inmates housed at Elkton Federal Correctional Institution, to obtain release from custody because of the COVID-19 pandemic.   <u>Wilson</u>, 961 F.3d at 832-33. The district court in that case had entered a preliminary injunction directing Elkton's Warden and the BOP Director to do the following:

> (1) evaluate each subclass member's eligibility for transfer out of Elkton by any means, including compassionate release, parole or community supervision, transfer furlough, or non-transfer furlough within two weeks; (2) transfer those deemed ineligible for compassionate release to another BOP facility where testing is available and physical distancing is possible; and (3) not allow those transferred to return to Elkton until certain conditions were met.

*Id.* at 833.   The BOP appealed arguing "(1) the district court lacked jurisdiction under 28 U.S.C. § 2241 and that the suit must comply with the Prison Litigation Reform Act ("PLRA"); (2) petitioners have not shown a likelihood of success on the merits of their Eighth Amendment claim; and (3)

the district court abused its discretion in granting the injunction." *Id.* The court held that "jurisdiction was proper under § 2241, although § 2241 does not permit some of the relief petitioners seek." *Id.* The court further held that the district court erred in concluding the petitioners had shown a likelihood of success on the merits of the Eighth Amendment claim and, thus, the district court abused its discretion in granting the preliminary injunction. *Id.* Accordingly, the Sixth Circuit vacated the injunction. *Id.*

In explaining its holding on the jurisdiction issue, the Wilson court indicated it "disagree[d] with the BOP's assertion that the district court lacked jurisdiction" and, further, "[t]o the extent petitioners argue the alleged unconstitutional conditions of their confinement can be remedied only by release, 28 U.S.C. § 2241 conferred upon the district court jurisdiction to consider the petition." *Id.* at 837. In particular, the court explained:

> We must initially address whether the district court properly invoked jurisdiction under 28 U.S.C. § 2241 over petitioners' claims. We conclude that petitioners' claims are properly brought under § 2241 because they challenge the fact or extent of their confinement by seeking release from custody. However, because petitioners bring their claims under § 2241, the relief available is circumscribed.
>
> Section 2241 provides jurisdiction to district courts over habeas petitions when a petitioner "is in custody in violation of

the Constitution or laws or treaties of the United States."   28
U.S.C. § 2241(c)(3).

> Petitioners seek release from Elkton and allege that there
> are "no mitigation efforts that Elkton could undertake that would
> prevent the risk of contraction – and possible later spread to the
> non-prison community – to any acceptable degree, other than
> immediate release of the Medically-Vulnerable Subclass."
> DE 1, Habeas Pet., Page 33.   Rather than arguing that there are
> particular procedures or safeguards that the BOP should put in
> place to prevent the spread of COVID-19 throughout Elkton,
> petitioners contend that there are no conditions of confinement
> sufficient to prevent irreparable constitutional injury at Elkton.
> They therefore seek release.   Our precedent supports the
> conclusion that where a petitioner claims that no set of conditions
> would be constitutionally sufficient the claim should be construed
> as challenging the fact or extent, rather than the conditions, of
> the confinement.   *See* Adams v. Bradshaw, 644 F.3d 481, 483
> (6th Cir. 2011); *cf.* Terrell v. United States, 564 F.3d 442, 446-48
> (6th Cir. 2009).   The Supreme Court has held that release from
> confinement – the remedy petitioners seek here – is "the heart of
> habeas corpus."   Preiser v. Rodriguez, 411 U.S. 475, 498 . . .
> (1973).

*Id.* at 837-38.   The court limited this to the petitioners in the medically-

vulnerable subclass and indicated that claims by the petitioners outside that

sub-class were properly characterized as conditions-of-confinement claims,

not appropriate for consideration under § 2241, because those petitioners

did not seek release but, rather, sought only improvement in the conditions

at Elkton:

The BOP's attempts to classify petitioners' claims as "conditions of confinement" claims, subject to the PLRA, are unavailing. The BOP is correct that conditions of confinement claims seeking relief in the form of improvement of prison conditions or transfer to another facility are not properly brought under § 2241. *See* Leudtke v. Berkebile, 704 F.3d 465, 466 (6th Cir. 2013). The BOP relies primarily on Martin v. Overton, 391 F.3d 710 (6th Cir. 2004), to argue that petitioners' claims are properly characterized as conditions of confinement claims. In Martin, the petitioner sought "transfer to a different prison facility for the purpose of medical treatment and civil damages resulting from the alleged delay and denial of that treatment." 391 F.3d at 714.

Because petitioners outside the medically-vulnerable subclass sought improvement in the conditions at Elkton rather than release, the district court correctly concluded that the claims by these inmates were conditions of confinement claims not appropriately considered under § 2241.

In contrast, petitioners in the medically-vulnerable subclass bring claims that are readily distinguishable from those in Martin, because "[p]etitioners challenge the extent of their custody and seek release from their confinement at Elkton" rather than transfer to another facility to receive different medical care. CA6 R. 40, Appellee Br., Page 33. Petitioners also point out that the petitioner in Martin could have any constitutional claims remedied without a change in his custody. Petitioners here, however, contend that the constitutional violations occurring at Elkton as a result of the pandemic can be remedied only by release. The BOP's framing of the requested relief as seeking transfer or improvement to the BOP's COVID-19 response procedures overlooks the fact that petitioners in the subclass seek release. Because petitioners seek release from confinement, "the heart of habeas corpus," Preiser, 411 U.S. at 498, . . . jurisdiction is proper under § 2241.

Case No. 3:20cv5518-MCR/MAF

*Id.* at 837-38.

Similarly, in this case, as explained above, Haymore seeks release from confinement, "the heart of habeas corpus," not improvement in the conditions at FPC Pensacola.   Thus, jurisdiction under § 2241 appears appropriate.

The Wilson court also explained that "the decision to bring a habeas claim, rather than one challenging the conditions of confinement, limits the type of relief available."   961 F.3d at 838.   "A district court reviewing a claim under § 2241 does not have authority to circumvent the established procedures governing the various forms of release enacted by Congress." *Id.*

The U.S. Attorney General, acting through the BOP, administers a federal defendant's sentence.   18 U.S.C. § 3621(b); United States v. Wilson, 503 U.S. 329, 335 (1992); Rodriguez v. Lamar, 60 F.3d 745, 747 (11th Cir. 1995).   After a petitioner exhausts administrative remedies with the BOP, the district court may review the constitutionality of the BOP's decision and statutory construction.   *See* Rodriguez, 60 F.3d at 747.   "[I]f congressional purpose is clear, then interpreting courts and administrative

agencies 'must give effect to the unambiguously expressed intent of Congress.'" *Id.* (quoting Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984)).   If the statute is silent or ambiguous, the court must defer to the agency's reasonable interpretation unless the interpretation is "'arbitrary, capricious, or manifestly contrary to the statute.'"   *Id.* (quoting Chevron, 467 U.S. at 844).

Respondent asserts that although Haymore began the administrative remedy process, he did not complete that process and, thus, has not exhausted his administrative remedies regarding his alleged entitlement to release to home confinement for the remainder of his prison term pursuant to the CARES Act.   Respondent attaches the declaration of Janet Gignilliat, in support of its position regarding exhaustion.   ECF No. 4-1.   Gignilliat works as the Warden's Secretary at the FPC in Pensacola and her duties include serving as the Administrative Remedy Clerk there.   *Id.* at 1. Gignilliat reviewed the BOP computerized database, SENTRY, which maintains records of all administrative remedies filed by inmates, and SENTRY indicated Haymore had submitted two administrative remedies, one concerning home confinement and one requesting earned-time credits

under the First Step Act.    *Id.* at 1-2.    Gignilliat further states:

> 9.    On May 8, 2020, an administrative grievance was received in the Warden's office from inmate Haymore.    That administrative grievance was given administrative remedy #1018324-F1.    Inmate Haymore raised a complaint regarding his not being referred for priority consideration for home confinement under the CARES Act.    He sought immediate[] home confinement as his relief.    **See, Attachment 1, Request for Administrative Remedy, dated May 5, 2020.**
>
> 10.    On June 3, 2020, inmate Haymore's administrative remedy was responded to, and he was advised that although he was on an initial roster of inmates who were to be considered for home confinement placement, he was subsequently denied due to not meeting the criteria.    Specifically, he had only served 38.8% of his sentence.    He was further advised that on June 3, 2020, his Case Manager submitted his case for home confinement consideration under an exception review.    That referral was sent to the Correctional Program Division in Washington, D.C. Inmate Haymore was advised that if he was dissatisfied with the response, he could appeal to the Regional Director in the Southeast Regional Office within 20 calendar days of the response.    **See, Attachment 2, Administrative Remedy Response #1018324-F1, dated June 3, 2020.**
>
> 11.    To date, there is no indication in SENTRY that inmate Haymore appealed the response to his administrative grievance.

*Id.* at 2-3.    Gignilliat executed her declaration on July 22, 2020.    *Id.* at 3.

In his response to the motion to dismiss, Haymore asserts he did exhaust his administrative remedies.    ECF No. 5 at 3.    He indicates that on May 8, 2020, he filed a BP-9 and "[p]er BOP policy, they have 20 days to

respond or file an extension." *Id.* He further asserts that "[d]espite a deadline of May 28, 2020, no response or extension was received by May 28, 2020," so "[o]n May 29, 2020, the Petitioner filed a BP-10 to the Southeast Regional Office." *Id.* He indicates that after he filed the BP-10, he received an extension request on the BP-9 and this request was "in June far after the deadline the BOP had to respond or extend the Petitioner's BP-9." *Id.* at 4. He attaches the request as Exhibit C to his response. *Id.* at 19. He further states that he filed a BP-11 on July 3, 2020, after he received no response or extension by the deadline for the BP-10. *Id.* at 4. He indicates that he "has learned from other inmates and staff that if a BP 10 or 11 isn't sent certified, that the common response from the BOP is 'they didn't get it,'" so he then sent his BP-11 certified mail with a date of July 18, 2020. *Id.* He indicates the BOP Central Office stamped it received on July 22, 2020, and he attaches it as Exhibit F. *Id.*; *see id.* at 23. That is the same day Gignilliat executed her declaration, as explained above.

The Eleventh Circuit Court of Appeals has held, in <u>Santiago-Lugo v. Warden</u>, 785 F.3d 467 (11th Cir. 2015), that a § 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect, overruling its

earlier decision in <u>Gonzalez v. United States</u>, 959 F.2d 211 (11th Cir. 1992).

The court explained that exhaustion of administrative remains a requirement,

"it's just not a jurisdictional one."   <u>Santiago-Lugo</u>, 785 F.3d at 475.

> What its non-jurisdictional nature means is that a court need not inquire into exhaustion on its own.   A court has the discretion to accept or reject a concession from the respondent that administrative remedies have been exhausted.   And because exhaustion is non-jurisdictional, even when the defense has been preserved and asserted by the respondent throughout the proceeding, a court may skip over the exhaustion issue if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching the exhaustion question.

*Id.* at 475 (citations omitted).

On the merits, even if he had exhausted his administrative remedies,

Petitioner Haymore's challenge fails.   Pursuant to 18 U.S.C. § 3621(b), the

BOP has the authority to "designate the place of the prisoner's

imprisonment," including placing a prisoner in home confinement for a

portion of the prisoner's prison term, as provided in 18 U.S.C. § 3624(c)(2).

ECF No. 4 at 4; *see* <u>McKune v. Lile</u>, 546 U.S. 24, 39 (2002) ("It is well settled

that the decision where to house inmates is at the core of prison

administrators' expertise."); *see also, e.g.*, <u>Burg v. Nicklin</u>, No. EP-19-CV-24-

FM, 2019 WL 369153, * (W.D. Tex. Jan. 29, 2019) (explaining, in order

denying petition for writ of mandamus that requested court to order respondent to immediately release inmate to home detention, "§ 3621(b) gives the BOP the authority and discretion to designate a prisoner's place of confinement" and, further, "[t]he Supreme Court has consistently held that a prisoner has no constitutional right to be confined in a particular place"). Specifically, the home confinement statute, 18 U.S.C. § 3624(c)(2), provides:

> **Home confinement authority. –** The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.   The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.

As Respondent explains, the CARES Act provides that the BOP Director "may lengthen the maximum amount of time which the Director is authorized to place a prisoner in home confinement" if "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), § 12003(b)(2); ECF No. 4 at 2-3.   "The Attorney General made those findings on April 3, 2020, conferring on BOP the authority to expand its use of house confinement." United States v. Phillips, No. 6:16cr198-Orl-28GJK, 2020 WL 2219855, at *1 (M.D. Fla. May 7, 2020).   "The CARES Act did not remove the exclusive

authority of the BOP to designate the place of an inmate's confinement."    *Id.*

Indeed, a district judge in the Southern District of Florida has explained, in

considering a federal inmate's request for placement in home confinement,

this authority remains exclusive to the BOP:

> Based on the clear statutory language of 18 U.S.C. § 3624(c)(2) and § 12003(b)(2) of the CARES Act, this Court has no authority to grant Defendant's request for placement in home confinement. "The CARES Act did not remove the exclusive authority of the BOP to designate the place of an inmate's confinement. 'The Attorney General – and by delegation the BOP – has exclusive authority and *discretion* to designate the place of an inmate's confinement.'"    Phillips, 2020 WL 2219855, at *1 (quoting Burg v. Nicklin, No. EP-19-CV-24-FM, 2019 WL 369153, at *3 (W.D. Tex. Jan. 29, 2019)); *see also* United States v. Daniels, No. 4:08-CR-0464-SLB, 2020 WL 1938973, at *1 (N.D. Ala. Apr. 22, 2020) ("The BOP designates the place of defendant's imprisonment. The Court does not have authority to dictate placements to the BOP. While the CARES Act gives the BOP broad discretion to **expand** the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision." (citing 18 U.S.C. § 3621(b); United States v. Cosby, 180 F. App'x 13, 13 (10th Cir. 2006); United States v. Engleson, No. 13-CR-340-3(RJS), 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020) (while the court can make a recommendation, the BOP retains the ultimate decision of whether to release an inmate to home confinement)) (quoting United States v. Read-Forbes, No. CR 12-20099-01-KHV, 2020 WL 1888856, *5 (D. Kan. Apr. 16, 2020))).

> It is important to understand that a request for home confinement under the CARES Act is different than a reduction-in-sentence (RIS) request based upon compassionate release. The BOP is utilizing its authority under 18 U.S.C. [§ 3624(c)(2)] . . . — not

the compassionate release provision of 18 U.S.C.
§ 3582(c) — to effectuate the Attorney General's
directive to the BOP regarding home confinement in
connection with the CARES Act. [This statute does]
not authorize a federal court to order the BOP to
release a prisoner. *See* United States v. Calderon,
No. 19-11445, 2020 WL 883084, at *1 (11th Cir. Feb.
24, 2020) (explaining that under § 60541(g)(1)(A) the
Attorney General "may" release eligible elderly
offenders, and district court was without jurisdiction
to grant relief); *see also* United States v. Lovelace,
No. 12-402, 2014 WL 4446176, at *2 (N.D. Ga. Sept.
[9,] 2014) ("[T]he Court has no authority to grant
Defendant's request and order the Bureau of Prisons
to release Defendant to a halfway house." (citing 18
U.S.C. §§ 3621(b) & (b)(5))).

United States v. Collins, No. CR 616-014, 2020 WL 2529487, at
*1 (S.D. Ga. May 18, 2020) (footnote omitted); United States v.
Smith, No. 8:17-CR-412-T-36AAS, 2020 WL 2512883, at *3
(M.D. Fla. May 15, 2020) ("[U]nder the CARES Act, the
determination of whether inmates qualify for home confinement
rests with the BOP Director, and the Court lacks authority to
direct the BOP to release the defendant to home confinement[.]"
(citing United States v. Robles, CR 3:17-343, 2020 WL 2306847,
at *5 (M.D. Pa. May 8, 2020))).

Indeed, the CARES Act "has nothing to say about the district
court's authority to order home confinement during the covered
emergency period." Daniels, 2020 WL 1938973, at *2.
Instead, "under the CARES Act, the BOP, through the Attorney
General's delegation, retains the 'exclusive authority and sole
discretion to designate the place of an inmate's confinement,'
including home confinement." *Id.*; *see also* de Jesus v. Woods,
No. 2:19-cv-121-WHA, 2019 WL 3326199, *4 (M.D. Ala. June 21,
2019) (BOP has the "exclusive authority and sole discretion" to
place inmates in home confinement (quoting Deffenbaugh v.
Sullivan, No. 5:19-HC-2049-FL, 2019 WL 1779573, *1 (E.D.N.C.

Apr. 23, 2019))); <u>United States v. Campbell</u>, No. 3:12-CR-24 (CAR), 2014 WL 12911957, *1 (M.D. Ga. Sept. 17, 2014) ("Defendant's request to be placed on home confinement lies within the sole discretion of the BOP, and any order from this Court would merely be a recommendation to the BOP to consider placing Defendant in home confinement." (citing 18 U.S.C. § 3621(b))). Because the Court lacks authority to grant the requested relief under 18 U.S.C. § 3624(c)(2) and § 12003(b)(2) of the CARES Act, this request is denied.

<u>United States v. Alvarez</u>, No. 19cr20343-BLOOM, 2020 WL 2572519, at *2-3 (S.D. Fla. May 21, 2020) (order denying motion requesting placement on home confinement).

Thus, "[t]he Attorney General – and by delegation – the BOP – has the exclusive authority and *discretion* to designate the place of an inmate's confinement." <u>Burg</u>, 2019 WL 369153 *3; *see, e.g.*, <u>Moore v. United States Att'y Gen.</u>, 473 F.2d 1375, 1376 (5th Cir. 1973) ("A person convicted of a crime against the United States and sentenced to confinement is committed by statute to the custody of the Attorney General at a place to be designated solely by the Attorney General."); <u>Ledesma v. United States</u>, 445 F.2d 1323, 1324 (5th Cir. 1971). *Accord, e.g.*, <u>Daniels</u>, 2020 WL 1938973 at *1 ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision."); <u>Brown</u>, 2020 WL 4582732 at *2

(denying § 2241 petition seeking home confinement based on health and COVID-19 pandemic, explaining, "The CARES Act did not remove the exclusive authority of the BOP to designate the place of an inmate's confinement.").   At least two judges in the Northern District have determined the CARES Act does not authorize the court to order home confinement for a prisoner.  United States v. Cochran, No. 3:16cr100-TKW/EMT, ECF No. 107 (N.D. Fla. Apr. 21, 2020) (order denying motion for emergency compassionate release based on CARES Act and explaining that "[a]ny relief that Defendant might be entitled to will have to come from the Bureau of Prisons (not the Court)"); United States v. Black, No. 1:15cr009-AW/GRJ, ECF No. 322, 2020 WL 4927583 (N.D. Fla. May 8, 2020) (order denying motion for home confinement based on § 12003(b)(2) of the CARES Act).

Based on the foregoing, Petitioner Haymore has not shown the BOP abused its discretion in denying his request for release to home confinement. Moreover, nothing indicates the CARES Act authorizes this Court to order such release.   Accordingly, this § 2241 petition should be denied.

## Conclusion

It is therefore respectfully **RECOMMENDED** that the petition for writ of habeas corpus filed under 28 U.S.C. § 2241 (ECF No. 1) be **DENIED** and

Respondent's motion to dismiss (ECF No. 4) be **DENIED as moot.**

   **IN CHAMBERS** at Tallahassee, Florida, on September 21, 2020.

                    **S/ Martin A. Fitzpatrick**
                    **MARTIN A. FITZPATRICK**
                    **UNITED STATES MAGISTRATE JUDGE**


                 **<u>NOTICE TO THE PARTIES</u>**

   **Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).   A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Fed. R. Civ. P. 72(b)(2).   <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**